UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 26-cr-80209-Artau/Reinhart

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

v.

PIERRE MARIE AUGUSTIN and
STEPHENSON JEROME,

Defendants.
________________________________/

FILED BY TM D.C.
Sep 24, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were prescribed by statute and by federal regulations under the auspices of the United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined in Title 18, United States Code, Section 24(b).

3. Part B of the Medicare Program was a medical insurance program that covered, among other things, certain physician and outpatient services, and other health care benefits, items, and services, including durable medical equipment ("DME"), that were medically necessary and ordered by licensed medical doctors or other qualified health care providers. DME is equipment that is designed for repeated use and for a medical purpose, such as prosthetic limbs, back braces, knee braces, and wheelchairs.

4. For Florida beneficiaries, Medicare Part B's insurance concerning DME and related health care benefits, items, and services, was administered by CGS Administrators, LLC ("CGS") pursuant to a contract with HHS. Among CGS's responsibilities, it received, adjudicated, and paid the claims of authorized DME suppliers that were seeking reimbursement for the cost of DME and other health care benefits, items, or services supplied or provided to Medicare beneficiaries.

5. DME companies, physicians, and other health care providers that sought to participate in Medicare Part B and bill Medicare for the cost of DME and related benefits, items, and services were required to apply for and receive a National Provider Identifier number ("NPI"). In the application, the provider acknowledged that to be able to participate in the Medicare program, the provider must comply with all Medicare-related laws and regulations.

6. The NPI allowed a DME company to submit bills, known as "claims," to Medicare to obtain reimbursement for the cost of DME and related health care benefits, items, and services that a DME company had supplied to beneficiaries.

7. Medicare permitted DME companies to submit claims for reimbursement electronically. Each claim required certain important information, including: (a) the Medicare beneficiary's name; (b) the Medicare beneficiary's identification number; (c) the name and NPI of the doctor or other qualified health care provider who ordered the health care benefit, item, or

service that was the subject of the claim; (d) the health care benefit, item, or service that was provided or supplied to the beneficiary; (e) the billing codes for each benefit, item, or service; and (f) the date upon which the benefit, item, or service was provided or supplied to the beneficiary.

8. Under Medicare rules and regulations, DME or other related health care benefits, items, or other services must be medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider in order to be reimbursed by Medicare. When electronically submitting a claim, the provider certified that the contents of the form were true, correct, and complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare Program.

9. Medicare, through CGS, generally would pay a substantial portion of the cost of the DME or related health care benefits, items, and services that were medically necessary and ordered by licensed doctors or other qualified health care providers.

10. Payments under Medicare Part B were often made directly to the DME company rather than to the patient/beneficiary. For this to occur, the beneficiary would assign the right of payment to the DME company or other health care providers. Once such an assignment took place, the DME company would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

**Durable Medical Equipment**

11. DME was equipment designed for everyday or extended use and for a medical purpose, such as orthotic devices, speech generating devices, collagen dressing, prosthetic limbs, wheelchairs, nebulizers, and oxygen concentrators.

12. DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries and Medicaid recipients were referred to as "providers."

13. Medicare reimbursed DME companies and other health care providers for items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

14. A Medicare claim for DME reimbursement was required to set forth, among others things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or order the equipment.

15. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for treatment of the beneficiary's illness or injury, prescribed by a licensed physician, and actually provided to the beneficiary as billed.

**The Defendants and Related Entities**

16. Vitality Health Technologies LLC ("Vitality") was a Florida company with a principal place of business in Palm Beach County, Florida. It was organized on or about January 18, 2024. It was purportedly in the business of supplying DME to Medicare beneficiaries. As of April 8, 2025, Vitality was eligible to receive payments from Medicare for DME supplied to beneficiaries, if the DME was medically necessary.

17. CLS Marketing Group Inc. ("CLS Marketing") was a Florida company located in Lantana, Florida.

18. Marketing Linked LLC ("Marketing Linked") was a Florida company located in West Palm Beach, Florida.

19. Bank 1 was a financial institution, the accounts of which were insured by the Federal Deposit Insurance Corporation.

20. Defendant **PIERRE MARIE AUGUSTIN** was a resident of Broward County, Florida, and an owner and manager of Vitality. He was also the incorporator, sole officer, and registered agent of CLS Marketing.

21. Defendant **STEPHENSON JEROME** was a resident of Palm Beach County, Florida, and a manager of Vitality. He was also the incorporator, sole officer, and registered agent of Marketing Linked.

**COUNT 1**
**Conspiracy to Commit Health Care Fraud and Wire Fraud**
**(18 U.S.C. § 1349)**

1. The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2. From in or around January 2024, continuing through in or around January 2026, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**PIERRE MARIE AUGUSTIN and**
**STEPHENSON JEROME,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a. in connection with the delivery of and payment for health care benefits, items, and services, to knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in violation of Title 18, United States Code, Section 1347; and

b. to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare, and the receipt of the fraud proceeds; and (c) diverting the fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the scheme.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

4. **PIERRE MARIE AUGUSTIN, STEPHENSON JEROME,** and others caused the submission of Medicare claims on behalf of Vitality, via interstate wire communication, totaling approximately $2,572,846. The aforementioned Medicare claims falsely and fraudulently represented that various health care benefits, items and services, primarily DME, were medically necessary, prescribed by a doctor, and had been provided by Vitality to Medicare beneficiaries.

5. As a result of the false and fraudulent Medicare claims, **PIERRE MARIE AUGUSTIN** and **STEPHENSON JEROME** caused Medicare to deposit approximately

$454,238 into Vitality's corporate bank account at Bank 1.

6. **PIERRE MARIE AUGUSTIN** and **STEPHENSON JEROME** used the proceeds of the health care fraud for their personal use and benefit, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-6**
**Health Care Fraud**
**(18 U.S.C. § 1347)**

1. The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2. From in or around January 2024, and continuing through in or around January 2026, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**PIERRE MARIE AUGUSTIN and**
**STEPHENSON JEROME,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program.

**PURPOSE OF THE SCHEME AND ARTIFICE**

3. It was a purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare, and the receipt and transfer of fraud proceeds; and (c) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud scheme.

## THE SCHEME AND ARTIFICE

4. Paragraphs 4 through 6 of the Manner and Means Section of Count 1 are re-alleged and fully incorporated herein as a description of the scheme and artifice.

## ACTS IN EXECUTION OF THE SCHEME AND ARTIFICE

5. On or about the dates specified as to each count below, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendants submitted and caused the submission of false and fraudulent Medicare claims seeking the identified approximate dollar amounts, and represented that, on or about the identified dates of service, Vitality had provided the identified DME to the identified beneficiaries pursuant to orders and prescriptions of the identified medical providers, who had been assigned the identified NPIs:

| Count | Approx. Claim Submission Date | Medicare Beneficiary | Medicare Claim Number | Item Claimed / Approx. Amount Claimed |
|---|---|---|---|---|
| 2 | July 17, 2025 | L.E. | 125198718579000 | Cervical, Collar, Semi-Rigid, Thermoplastic Foam, Two Piece with Thoracic Extension, Prefabricated / $450 |
| 3 | July 22, 2025 | D.L. | 125203722003000 | Elbow Orthosis, with Adjustable Position Locking Joints, Prefabricated / $1200 |
| 4 | July 29, 2025 | J.L. | 125210718339000 | Knee Orthosis, Adjustable Knee Joints, Positional Orthosis, Rigid Support, Prefabricated / $1200 |

| Count | Approx. Claim Submission Date | Medicare Beneficiary | Medicare Claim Number | Item Claimed / Approx. Amount Claimed |
|---|---|---|---|---|
| 5 | August 5, 2025 | N.S. | 125217721491000 | Knee Orthosis, Adjustable Knee Joints, Positional Orthosis, Rigid Support, Prefabricated / $1200 |
| 6 | August 21, 2025 | J.C. | 125233721999000 | Hip Orthosis, Bilateral Thigh Cuffs with Adjustable Abductor Spreader Bar, Adult Size, Prefabricated / $635 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 7-11
## Aggravated Identity Theft
## (18 U.S.C. § 1028A(a)(1))

1. The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2. On or about the dates specified as to each count below, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**PIERRE MARIE AUGUSTIN and**
**STEPHENSON JEROME,**

during and in relation to a felony violation of Title 18, United States Code, Section 1347, that is health care fraud, as charged in Counts 2-6 of this Indictment, did knowingly transfer, possess, and use, without lawful authority, the means of identification of another person, as specified in each Count below:

| Count | Approx. Date | Means of Identification |
|---|---|---|
| 7 | July 17, 2025 | Name and National Provider Identifier belonging to A.L. |
| 8 | July 22, 2025 | Name and National Provider Identifier belonging to A.M. |

| Count | Approx. Date | Means of Identification |
|---|---|---|
| 9 | July 29, 2025 | Name and National Provider Identifier belonging to A.S. |
| 10 | August 5, 2025 | Name and National Provider Identifier belonging to A.T. |
| 11 | August 21, 2025 | Name and National Provider Identifier belonging to A.R. |

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

**COUNT 12**
**Conspiracy to Commit Money Laundering**
**(18 U.S.C. § 1956(h))**

1. The General Allegations section and Paragraphs 4 through 6 of the Manner and Means Section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. From at least as early as in or around January 2024, and continuing through in or around January 2026, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**PIERRE MARIE AUGUSTIN and**
**STEPHENSON JEROME,**

did knowingly and voluntarily combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to commit an offense against the United States, that is, to knowingly conduct financial transactions, affecting interstate and foreign commerce, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and which in fact involved the proceeds of specified unlawful activity, that is, health care fraud, in violation of Title 18, United States Code, Section 1347, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity,

in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 13-16**
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

1. The General Allegations section and Paragraphs 4 through 6 of the Manner and Means Section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates as to each count set forth below, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**PIERRE MARIE AUGUSTIN and**
**STEPHENSON JEROME,**

did knowingly conduct financial transactions, affecting interstate and foreign commerce, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and which in fact involved the proceeds of specified unlawful activity, that is, health care fraud, in violation of Title 18, United States Code, Section 1347, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, as set forth below:

| Count | Approx. Date of Transaction | Description of Monetary Transaction |
|---|---|---|
| 13 | September 19, 2025 | Transfer of $8,200 from account number ending in 4632 in the name of Vitality at Bank 1 to account number ending in 4188 in the name of CLS Marketing at Bank 1. |
| 14 | September 22, 2025 | Transfer of $8,200 from account number ending in 4632 in the name of Vitality at Bank 1 to account number ending in 4188 in the name of CLS Marketing at Bank 1. |

| Count | Approx. Date of Transaction | Description of Monetary Transaction |
|---|---|---|
| 15 | September 19, 2025 | Transfer of $12,500 from account number ending in 4632 in the name of Vitality at Bank 1 to account number ending in 8982 in the name of Marketing Linked at Bank 1. |
| 16 | September 26, 2025 | Transfer of $20,700 from account number ending in 4632 in the name of Vitality at Bank 1 to account number ending in 8982 in the name of Marketing Linked at Bank 1. |

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

**FORFEITURE ALLEGATIONS**

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **PIERRE MARIE AUGUSTIN and STEPHENSON JEROME,** have an interest.

2. Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 1347, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. Upon conviction of a violation of Title 18, United States Code, Section 1956 and/or 1957, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1)

All pursuant to Title 18, United States Code, Section 982 (a)(1) and (7) and the procedures outlined in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

[redacted]

FOREPERSON

JASON A. REDING QUINONES
UNITED STATES ATTORNEY

BRIAN RALSTON
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: ______________________

v.

PIERRE MARIE AUGUSTIN and
STEPHENSON JEROME,

Defendants. /

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
☐ Miami ☐ Key West ☐ FTP
☐ FTL ☑ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: __________
4. This case will take 7 days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I ☐ 0 to 5 days
   II ☑ 6 to 10 days
   III ☐ 11 to 20 days
   IV ☐ 21 to 60 days
   V ☐ 61 days and over

   (Check only one)
   ☐ Petty
   ☐ Minor
   ☐ Misdemeanor
   ☑ Felony
6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge __________ Case No. __________
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge __________ Magistrate Case No. __________
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge __________ Case No. __________
9. Defendant(s) in federal custody as of __________
10. Defendant(s) in state custody as of __________
11. Rule 20 from the ______ District of __________
12. Is this a potential death penalty case? (Yes or No) No
13. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
14. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No
17. Did this matter involve the participation of or consultation with Magistrate Judge Brandy Brentari Galler during her tenure at the U.S. Attorney's Office, which concluded on July 30, 2026? No

By: ______________________

Brian D. Ralston
Assistant United States Attorney
District Court No. A5502727

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: Pierre Marie Augustin

**Case No**: ______

Count #: 1

Conspiracy to Commit Heath Care Fraud and Wire Fraud

18 U.S.C. § 1349
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000, or twice the gross gain or twice the gross loss, whichever is greater
* **Special Assessment:** $100

Counts #: 2-6

Health Care Fraud

18 U.S.C. § 1347
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000
* **Special Assessment:** $100

Counts #: 7-11

Aggravated Identity Theft

18 U.S.C. § 1028A(a)(1)
* **Max. Term of Imprisonment:** 2 years
* **Mandatory Min. Term of Imprisonment (if applicable):** 2 years consecutive to any other term of imprisonment imposed
* **Max. Supervised Release:** 1 year
* **Max. Fine:** $250,000 fine
* **Special Assessment:** $100

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Count #: 12

Conspiracy to Commit Money Laundering

18 U.S.C. § 1956(h)

* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $500,000 fine or twice the value of the property involved in the transaction, whichever is greater
* **Special Assessment:** $100

Counts #: 13-16

Money Laundering

18 U.S.C. § 1956(a)(1)(B)(i)

* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $500,000 fine or twice the value of the property involved in the transaction, whichever is greater
* **Special Assessment:** $100

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: Stephenson Jerome

**Case No**: ______

Count #: 1

Conspiracy to Commit Heath Care Fraud and Wire Fraud

18 U.S.C. § 1349
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000, or twice the gross gain or twice the gross loss, whichever is greater
* **Special Assessment:** $100

Counts #: 2-6

Health Care Fraud

18 U.S.C. § 1347
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000
* **Special Assessment:** $100

Counts #: 7-11

Aggravated Identity Theft

18 U.S.C. § 1028A(a)(1)
* **Max. Term of Imprisonment:** 2 years
* **Mandatory Min. Term of Imprisonment (if applicable):** 2 years consecutive to any other term of imprisonment imposed
* **Max. Supervised Release:** 1 year
* **Max. Fine:** $250,000 fine
* **Special Assessment:** $100

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Count #: 12

Conspiracy to Commit Money Laundering

18 U.S.C. § 1956(h)

* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $500,000 fine or twice the value of the property involved in the transaction, whichever is greater
* **Special Assessment:** $100

Counts #: 13-16

Money Laundering

18 U.S.C. § 1956(a)(1)(B)(i)

* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $500,000 fine or twice the value of the property involved in the transaction, whichever is greater
* **Special Assessment:** $100

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**